UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 08-30056-01-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER ADOPTING |
| | ) | MAGISTRATE JUDGE'S |
| JADE LAROCHE, | ) | REPORT AND |
| | ) | RECOMMENDATION |
| Defendant. | ) | |

Defendant, Jade LaRoche, is charged with one count of forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering with a police officer employed by the Bureau of Indian Affairs, Department of Interior in violation of 18 U.S.C. § 111(a)(1). Docket 3. He moves to suppress statements made to a law enforcement officer after being arrested on May 14, 2008. Docket 14.

The court referred the motion to suppress to Magistrate Judge Mark A. Moreno pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge recommends that this court grant in part and deny in part LaRoche's motion to suppress. Specifically, the magistrate judge recommends that the court grant the motion to the extent it seeks to exclude LaRoche's statement agreeing to "take all the blame" as substantive evidence, but deny the motion in all other respects. LaRoche objects to that portion of the report and recommendation that allows in his statement agreeing to "take all the blame" for impeachment

purposes and all his other statements as both substantive and impeachment evidence. The government has not objected to the report and recommendation.

### STANDARD OF REVIEW

The court must make a de novo review "of those portions of the [Magistrate's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also United States v. Lothridge, 324 F.3d 599 (8th Cir. 2003); Jones v. Pillow, 47 F.3d 251, 253 (8th Cir. 1995). 28 U.S.C. § 636(b)(1) requires that when a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.; see also Fed. R. Civ. P. 72 (b). After a de novo review of the magistrate judge's report and recommendation and a review of the record, the court accepts the report and recommendation of the magistrate judge as supplemented herein.

### DISCUSSION

**I.    Background**

On May 14, 2008, tribal officer Yuma House arrested LaRoche for the tribal offenses of eluding, driving while intoxicated, and reckless driving. Docket 23, at 4. Officer House approached LaRoche carrying a flashlight in one hand and a collapsible baton in the other. Id. at 5. Officer House used

only verbal commands to obtain LaRoche's compliance.  Id.  After handcuffing LaRoche, Officer House advised him of his Miranda rights, asked him whether he understood his rights, and asked whether, with those rights in mind, he wished to speak with Officer House.  Id. at 8-9.  LaRoche did not respond to Officer House's questions, did not ask for an attorney, and did not state that he wished to remain silent.  Id.  Officer House did not have LaRoche sign a written waiver of his rights.  Id. at 19.  Officer House asked LaRoche to stand up and began walking with him back to the patrol car.  Id. at 9-10.

Shortly after being advised of his Miranda rights and while walking with Officer House, LaRoche stated, "I gotta do what I gotta do." Id. at 10.  Officer House asked LaRoche what he meant, and LaRoche responded, "I gotta get away from you guys."  Id.  Without any intervening comments or questions from Officer House, LaRoche went on to say that he was the driver of the vehicle.  Id. at 22.  Knowing that there had been another passenger in the vehicle, Officer House asked if LaRoche was going to take the blame, and LaRoche said, "Yes, I'm taking all the blame." Id. at 10.  The only questions Officer LaRoche asked during this exchange were what LaRoche meant when he said he had to do what he had to do and whether LaRoche was going to take the blame.  Id. at 22.

Officer House observed that LaRoche was slurring his words and seemed intoxicated, but was capable of following the officer's instructions.  Id. at 10,

3

19.  Officer House was wearing law enforcement clothing, carried a visible gun, and raised his voice at LaRoche, but he did not make any promises to LaRoche or threaten him during the exchange.  Id. at 11-12, 20.

## II.     Factual Findings

LaRoche objects to the magistrate judge's factual findings that Officer House advised him of his Miranda rights as testified to at the motion hearing, that LaRoche spontaneously said, "I gotta do what I gotta do" and "I was the driver of the vehicle, and that Officer House did not coerce or threaten LaRoche in any way.

LaRoche argues that Officer House did not actually read the Miranda warnings from a card as he testified to in the motion hearing, see id. at 7, because his written report only has the word "Miranda" in parentheses and does not indicate that he took a card out of his pocket and read the warnings from it.  The court finds credible Officer House's testimony that he read from the card that was introduced into evidence at the motion hearing the warnings and the questions about whether LaRoche understood those rights and wished to speak with the officer.  The shorthand notation in Officer House's report does not indicate that the officer did not fully advise LaRoche of his Miranda rights.

LaRoche also objects to the magistrate judge's finding that LaRoche spontaneously said, "I gotta do what I gotta do" and "I was the driver of the

vehicle" on the ground that Officer House's testimony was not credible. LaRoche claims that Officer House initially denied questioning him at all and then admitted on cross-examination that he asked LaRoche two follow-up questions. Having reviewed the transcript of the motion hearing, the court finds that Officer House testified that he did not ask LaRoche to say anything while they were walking to the patrol car, but that LaRoche volunteered the statement "I gotta do what I gotta do." Officer House only denied initiating the conversation, not asking LaRoche any questions at all. Because Officer House did not contradict himself, the court finds credible Officer House's testimony that LaRoche's statements of "I gotta do what I gotta do" and "I was the driver of the vehicle" were spontaneous.

Finally, LaRoche objects to the magistrate judge's finding that Officer House did not threaten or coerce him in any way because the officer approached LaRoche with a baton in his hand and his voice raised. Because the coerciveness of Officer House's interaction with LaRoche is part of the voluntariness determination, the court will consider all of the facts surrounding the conversation to evaluate whether LaRoche was coerced into making the statements.

### III. Legal Findings

The magistrate judge recommended that the court suppress LaRoche's statement that he would "take all the blame" as taken in violation of Miranda,

but find admissible all of LaRoche's other statements. LaRoche objects to the magistrate judge's recommendation that any of his statements come in for any purpose. The government does not object to the recommendation that LaRoche's statement that he would take all of the blame be excluded as substantive evidence. Because a finding that LaRoche's statements are involuntary would eliminate the need to address the Miranda issue, the court will address this issue first.

### A. Voluntariness

LaRoche argues that his statements to Officer House were involuntary and therefore inadmissible under the Fifth Amendment of the United States Constitution. Due process requires that confessions be voluntary. See Brown v. Mississippi, 297 U.S. 278, 285-86, 56 S. Ct. 461, 80 L. Ed. 682 (1936); see also Schneckloth v. Bustamonte, 412 U.S. 218, 225-26, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973) (explaining that voluntary confession may be used against defendant while the use of involuntary confession offends due process). "The appropriate test for determining the voluntariness of a confession is 'whether . . . pressures exerted upon the suspect have overborne his will.'" United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir. 1990) (quoting United States v. Jorgensen, 871 F.2d 725, 729 (8th Cir. 1989)). A statement is voluntary if it is "the product of an essentially free and unconstrained choice by its maker." Schneckloth, 412 U.S. at 225. On the other hand, "[a] statement is involuntary

6

when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004).

The voluntariness of a confession is judged by the totality of the circumstances. Id. Two factors the court must consider are the "conduct of the officers and the characteristics of the accused." Id. A statement cannot be rendered involuntary by the incapacity of the defendant alone; there must be some coercive police activity. Colorado v. Connelly, 479 U.S. 157, 164, 167, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986). "The government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary." LeBrun, 363 F.3d at 724. Involuntary statements are inadmissible at trial for any purpose. Michigan v. Harvey, 494 U.S. 344, 351, 110 S. Ct. 1176, 108 L. Ed. 2d 293 (1990).

The court agrees with the magistrate judge's recommendation that LaRoche's statements were not involuntary and therefore did not violate his due process rights. Considering all the facts surrounding the conduct of Officer House and the capacity of LaRoche, there is no indication that LaRoche's will was overborne in making the statements. The conversation lasted no longer than a few minutes, and the only potentially threatening aspects of Officer House's conduct were that he carried a baton in his hand

while initially approaching LaRoche, carried a visible gun around his belt, and raised his voice while talking to LaRoche. Officer House did not wave the baton at LaRoche, pull out his gun, or threaten LaRoche. Officer House did not make any promises to get LaRoche to speak, and LaRoche spontaneously initiated the conversation by saying "I gotta do what I gotta do." Under these circumstances, Officer House did not display coercive conduct sufficient to overbear LaRoche's will. See LeBrun, 363 F.3d at 724 (statement voluntary unless it was extracted by threats, violence, or express or implied promises).

     Moreover, the fact that LaRoche was intoxicated during the exchange with Officer House does not render his statements involuntary. "[C]ustodial statements are not per se involuntary because of intoxication. The standard is whether, by reason of intoxication or other factor, defendant's 'will was overborne' or whether his statements were the 'product of a rational intellect and a free will.'" United States v. Brown, 535 F.2d 424, 427 (8th Cir. 1976) (internal citations omitted). In Brown, the defendant's statements were voluntary, even though he was intoxicated, because he was sufficiently coherent to find his driver's license, lie about a license misidentification, and climb stairs. Id. Here, LaRoche's intoxication did not cause his will to be overborne. Like the defendant in Brown, LaRoche was still coherent enough to engage in conversation with Officer House, recognize his potential culpability and explain his attempt to get away from the officer, follow Officer House's

directions, and walk to the patrol car. The court agrees with the magistrate judge that LaRoche's intoxication and Officer House's conduct did not impose pressures strong enough to overbear LaRoche's will. Considering the totality of the circumstances, the court is satisfied that the government has met its burden of showing by a preponderance of the evidence that LaRoche's statements were voluntary. Therefore, the statements will not be suppressed on grounds of involuntariness.

### B. Miranda

LaRoche also argues that even if his statements were voluntarily given, they were taken in violation of Miranda and should be excluded on that ground. Specifically, he objects to the magistrate judge's findings that his statements "I gotta do what I gotta do" and "I was the driver of the vehicle" were not the product of custodial interrogation. Because it is unclear whether LaRoche objects to the magistrate judge's recommendation on the statement "I gotta get away from you guys," the court will consider that statement as well.

Miranda requires that an individual be advised of the privilege against self-incrimination and the right to the assistance of counsel prior to questioning when the suspect is being interrogated while in custody. See United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990). Voluntary statements taken in violation of Miranda are inadmissible in the government's case in chief, but are admissible for impeachment purposes on cross-

examination.  Oregon v. Elstad, 470 U.S. 298, 307, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985) (citing Harris v. New York, 401 U.S. 222, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971)).

For the purposes of Miranda, interrogation "must reflect a measure of compulsion above and beyond that inherent in custody itself."  Butzin v. Wood, 886 F.2d 1016, 1018 (8th Cir. 1989).  Interrogation includes express questioning and "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response."  United States v. Lockett, 393 F.3d 834, 837 (8th Cir. 2005) (quoting Rhode Island v. Innis, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980)).  Spontaneous statements made during a conversation not initiated by the officer do not fall under Miranda.  United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005).  "An officer's request for clarification of a spontaneous statement generally does not constitute interrogation."  Id.  Such a request, however, does constitute interrogation if the question "enhance[s] the defendant's guilt or raise[s] the offense to a higher degree."  Butzin, 886 F.2d at 1018.

Here, all three of the challenged statements were made spontaneously, and there was no interrogation within the meaning of Miranda.  LaRoche's statement on the walk to the patrol car that "I gotta do what I gotta do" was spontaneous because Officer House did not initiate conversation and LaRoche

was not responding to a question by Officer House.  See Chipps, 410 F.3d at 445 (defendant's statement that he knew there was an outstanding warrant against him was spontaneous where the officer had not mentioned a warrant).

Further, Officer House's question of what LaRoche meant did not qualify as interrogation.  Rather, it was an attempt to clarify LaRoche's previous statement.  Simply asking what LaRoche meant is not an attempt to enhance his guilt or raise the offense to a higher degree.  See United States v. Cordova, 990 F.2d 1035, 1038 (8th Cir. 1993) (finding no interrogation where officer responded to defendant's statement that the drugs were inside of her body by asking her to explain).  Therefore, LaRoche's response that he had to "get away from you guys" was not a statement in response to interrogation.

Finally, LaRoche's statement, "I was the driver of the vehicle" was also spontaneous and outside the protection of Miranda.  LaRoche made this statement after a moment of silence, in which Officer House said nothing, so it was not a statement in response to interrogation.  See Chipps, 410 F.3d at 445 (finding that even after an officer had initiated a conversation, a statement by the defendant after a minute of silence and not in response to a question by the officer was spontaneous).

Because none of the statements LaRoche argues should be suppressed were made within the context of custodial interrogation, the court adopts the magistrate judge's recommendation that Miranda warnings were unnecessary,

11

and the three challenged statements are admissible as substantive evidence. The only statement that shall be suppressed is LaRoche's statement, "I'm taking all the blame." This statement is inadmissible as substantive evidence, but admissible for impeachment purposes.

Accordingly, it is hereby

ORDERED that the court adopts the Bench Decision/Report and Recommendation of Magistrate Judge Mark A. Moreno (Dockets 22, 24) as supplemented herein and, therefore, defendant's motion to suppress (Docket 14) is granted in part and denied in part.

Dated September 9, 2008.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

12